UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

ZARMACH OIL SERVICES, INC. :
17 Rue Des Pierres Du Niton :
Geneva, Switzerland, :
 :
                      **Plaintiff,** :
 :
v. : Case No.
 :
UNITED STATES DEPARTMENT :
 OF THE TREASURY, OFFICE OF :
 FOREIGN ASSETS CONTROL :
1500 Pennsylvania Avenue, N.W. :
Washington, DC 20220, :
 :
                      **Defendant.** :
 :
  Also serve: :
  Channing D. Phillips :
  Acting United States Attorney :
  U.S. Attorneys Office for the District of Columbia :
  555 Fourth Street, N.W. :
  Washington, DC 20530 :
 :
     and :
 :
  The Honorable Eric Holder :
  Attorney General of the United States :
  U.S. Department of Justice :
  950 Pennsylvania Avenue, NW :
  Washington, DC 20530-0001 :
 :

## COMPLAINT FOR RELEASE OF BLOCKED FUNDS

NOW COMES PLAINTIFF, Zarmach Oil Services, Inc. (Zarmach) and hereby asserts the following complaint for the release of funds currently blocked by the United States

Department of the Treasury, Office of Foreign Assets Control (OFAC). In support of the Complaint, Zarmach alleges the following facts:

## PARTIES

1. Plaintiff is a corporation incorporated in Switzerland, headquartered in Switzerland and engaged in business activities entirely outside of the United States.

2. Defendant is the Government of the United States, acting through the Department of Treasury, Office of Foreign Assets Control.

## JURISDICTION AND VENUE

3. This Court has jurisdiction over the parties pursuant to 28 U.S.C. 1331, as this case involves federal questions under the Administrative Procedure Act, 5 U.S.C. Section 701 et. seq.

4. Venue in the District of Columbia is appropriate as OFAC operates its central office within the District of Columbia and the decision denying the license occurred in the District of Columbia.

## BACKGROUND

5. Almost six years ago in November of 2003, Cliveden Petroleum, Inc. ("Cliveden"), a Geneva Switzerland corporation, negotiated a lease with Sudan National Petroleum Corporation ("Sudapet") for oil drilling rights in the Sudan.

6. As a Swiss Corporation, Cliveden was acting fully within all applicable laws in negotiating and leasing from Sudapet.

7. The amount owed to Sudapet for this lease totaled $915,102. To effectuate payment, Cliveden requested that its bank, Banco Atlantico, Gibraltar, transfer payment via electronic wire to Sudapet's bank, United European Bank, Geneva, Switzerland.

8. The entire transaction was to be conducted external to the United States.

9. During the transfer process, the funds were converted from Euros to U.S. Dollars and unintentionally routed through the intermediary bank of Bank of New York Mellon ("BONY"). The decision to route the funds through BONY was not made by Cliveden and Cliveden was given no notice that its funds were being routed through the United States.

10. During this conversion and wire transfer, the U.S. Department of Treasury, Office of Foreign Assets Control ("OFAC"), froze the $915,102, claiming the freezing of assets was required to avoid the violations of Trading with the Enemy Act ("TWEA"), [12 U.S.C. §95a] and the International Emergency Economic Powers Act ("IEEPA"), 50 U.S.C. §§ 1701, *et seq.*, because Sudan and its instrumentalities were the subject of economic sanctions imposed by the U.S. Government.

11. The Office of Foreign Assets Control ("OFAC"), acting on behalf of the Secretary of the Treasury, has the authority to provide for specific or general licenses or exceptions to a blocking order. 50 U.S.C.App. § 5; 31 C.F.R. § 500.801. Parties seeking a license must apply to OFAC, and OFAC's decision on any application constitutes final agency action. 31 C.F.R. § 500.803.

12. Cliveden wrote a letter to BONY, dated November 21, 2003, requesting that the frozen funds be released. *See* **Exhibit 1**.

13. On behalf of Cliveden, the originating financial institution, Banco Atlantico, applied to OFAC for a specific license, permitting release of the frozen funds.

14. Stating that "it would be inconsistent with U.S. sanctions policy to authorize the release of the Blocked Property", the OFAC denied the application. *See* **Exhibit 2** (Letter Denying Release).

15. The Swiss Company, Cliveden, was still obligated to pay for the oil lease and to fund training programs for the Sudanese workers.

16. In order to satisfy the lease obligation with Sudapet, Cliveden wired a separate payment of $915,102 to Sudapet and thus completed the lease transaction in accordance with all applicable laws.

17. Sudapet never asserted ownership or a claim to the original funds held by OFAC. Shortly thereafter in December of 2003, Cliveden entered into an agreement with the Swiss company, Zarmach Oil Services, Inc. ("Zarmach"), transferring all of Cliveden's interest in the frozen funds to Zarmach. *See* **Exhibit 3**.

18. Zarmach waited for further action from OFAC. After recognizing that OFAC was unlikely to withdraw the sanctions against Sudan and recognizing that it has been denied the use of its funds for six years, Zarmach, in 2009, requested a license for the release of the funds blocked in 2003.

19. OFAC denied the request without meaningful explanation. See **Exhibit 4**.

## JUDICIAL REVIEW

20. An applicant dissatisfied with OFAC's disposition of an application for a license may seek judicial review of the decision in accordance with the provisions of the Administrative Procedure Act ("APA"), 5 U.S.C. § 701 *et seq.; see also Tran Qui Than*, 658 F.2d at 1300-01 (denial of license under 31 C.F.R. § 500.801 subject to review under the APA).

21. As described herein, the continued retention of the blocked funds is not supported by law and the release of the funds would not be inconsistent with U.S. sanctions policy, as Sudan has no interest in the funds.

4

22. The APA provides that a reviewing court must set aside agency findings and conclusions of law determined to be:

> (A) arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with the law;
> (B) contrary to constitutional right, power, privilege, or immunity;
> (C) in excess of statutory jurisdiction, authority, or limitations, or short of statutory right....
> 5 U.S.C. § 706(2).

23. Zarmach seeks review of OFAC's disposition on all three grounds set forth above.

## THE RUX LITIGATION

24. Zarmach's funds along with millions of dollars of other funds held in abeyance pursuant to the Sudanese Sanction Regulations ("SSR"), 31 C.F.R. § 538.201, became the focus of a judgment recovery action in the Southern District of New York.

25. This judgment action stemmed from litigation involving the personal representatives and family members of the victims of the U.S.S. Cole bombing in Yemen ("Rux Plaintiffs") and the Government of the Sudan.

26. The litigation resulted in a favorable outcome for the Rux Plaintiffs and a civil judgment against Sudan in the amount of $12,275,860.

27. Pursuant to the Sudanese Sanction Regulations ("SSR") and the Terrorism Risk Insurance Act ("TRIA"), the Rux Plaintiffs filed a petition to attach a large quantity of blocked funds, some depository and some wire transfers, held by a number of United States intermediary banks allegedly belonging to Sudan and held within the United States by the intermediary banks.

28. After the filing of the petition, the intermediary banks answered with an interpleader request to the court for assistance in the determination of how to proceed with the Rux Petitioner's recovery action and to determine which, if any, funds were subject to recovery.

29. All funds frozen because of alleged ties to Sudan were turned over to the court, including Zarmach's funds. The Intermediary Banks were ordered to notify all potential owners of the funds and any objections to the action or use of particular funds were filed with the Court.

30. Given that Zarmach was the owner of frozen funds and received notice of the interpleader action, it filed an objection, along with several other entities and individuals. *See* **Exhibit 5** (Objection).

31. After reviewing these objections, the Court determined that the Rux damages could be satisfied out of the blocked funds other than Zarmach's funds.

32. The intermediary banks also determined that all attorneys' fees and costs could be paid out of the uncontested funds, thus permitting a return of all of Zarmach's funds to the original intermediary bank, BONY, that effectuated the original freeze. *See* **Exhibit 6** (Order to Return Funds).

33. No other claimants to the blocked funds appeared during the interpleader action, despite substantial publicity of the case.

34. In the six years that the funds have been blocked, neither Sudan, nor any claimant against Sudan has asserted any ownership rights to these funds.

35. The OFAC decision refusing to grant a license for the release of the blocked funds does not advance any government interest or impose any sanction on Sudan. It merely benefits the Bank of New York, while taking valuable property interests from Zarmach.

## SUDAN HAS NO OWNERSHIP INTEREST IN THE FUNDS

36. Throughout all of this recovery action, the Court, the intermediary bank, and the government considered Cliveden/Zarmach to be the owner of the funds to which it had a claim. Additionally, the government made broad statements to the Court and those involved with the

recovery action concerning the delicate ownership status of funds frozen during a wire transfer. See **Exhibit 7** (Hearing Transcript).

37. The representative for the government stated the following at a hearing before Judge Alvin K. Hellerstein on February 19, 2009:

> We are not taking any categorical position as to wire transfers either originated by Sudan or intended to go to Sudan. I think realistically we have less concern about transfers originated with Sudan because in our mind . . . ownership remains there until the transfer is complete . . . so we think that is a fairly straightforward ownership analysis that makes funds available for petitioner, and then would have the question of funds intended to reach Sudan, which didn't get there, and as to that, I think it's conceivable that there could be Sudanese ownership interest sufficient to reach TRIA, but I think the Court has to sort of tread carefully and those present difficult issues. *Because as a practical matter, it's hard to say whether that's actually money owned by Sudan.*

H'rg Tr. 31:4-6 (emphasis added).

38. Zarmach agrees with the Government attorneys that practically speaking, wire transfers that do not reach the actual beneficiary or even beneficiary's bank cannot be considered the property of the beneficiary and therefore should support the release of such funds back to their owner.

39. The freezing of the wire transfer at the intermediary bank level also runs contrary to the New York Uniform Commercial Code ("N.Y. U.C.C.") and its definition of ownership and property. Article 4-A-406(1) of the N.Y. U.C.C., clearly states that payment is not effected from the originator to the beneficiary until an order is accepted by the beneficiary bank.

40. Thus, "until the funds transfer is completed by acceptance by the beneficiary's bank of payment order for the benefit of the beneficiary, the beneficiary has no property interest in the funds transfer . . . ." Official Comment, U.C.C. § 502(4).

41. Applying this logical explanation to the facts of the present case, Cliveden's payment could not become the property of Sudapet until there was acceptance of the transfer by the beneficiary bank, United European Bank, and such acceptance never occurred.

42. Turning to the N.Y. U.C.C., only two methods of acceptance would have sufficed: (1) payment of Sudapet by its beneficiary bank (or notification to Sudapet that a payment order was received), or (2) crediting of its account by the intermediary bank. *See* N.Y. U.C.C. § 4-A-209(2)(a); *United States v. BCCI Holdings (Lux.)*, 980 F. Supp 507, 513-14 (D.D.C. 1997); *Sheerbonnet Ltd. v. American Express Bank, Ltd.*, 951 F. Supp. 403, 406-07 (S.D.N.Y. 1995).

43. Neither payment of Sudapet nor a crediting of Sudapet's bank by the intermediary bank occurred in the present case. Sudapet never considered the frozen funds to be in its possession or its property.

44. This is proven by the fact that Cliveden was forced to transfer another payment for the amount of $915,102 to Sudapet so as to satisfy the lawful terms of the agreement between them. Sudapet never once considered the $915,102 held by BONY to be its property and does not currently.

45. The only entity with a remaining claim in the frozen funds is Zarmach and as such the funds should be released and returned to Zarmach.

## POLICY NOT SUPPORTED BY CONTINUED HOLDING OF FUNDS

46. As stated in the implementing Executive Order 13067 of November 5, 1997, the reason for imposing the sanction, was to counteract the policies and actions of Sudan, "including continued support for international terrorism; ongoing efforts to destabilize neighboring governments; and the prevalence of human rights violations. . . ." Exec. Order No. 13067

(1997). Two subsequent executive orders built upon this fundamental purpose. *See* Executive Order Nos. 13412 & 13400.

47. In January of 2009, OFAC released a report to Congress, titled, "Effectiveness of the U.S. Economic Sanctions with Respect to Sudan." *See* **Exhibit 8** (Report). In this report, OFAC described the "ultimate objective" of the sanctions as that of "behavioral change." Report p.7. OFAC added that "[short of this ultimate objective . . . the most meaningful measure of a sanctions program is whether and to what extent it is exerting pressure on relevant decision makers such that it affects their behavioral calculi." *Id.*

48. The present circumstances offer no incentive or impetus for Sudan, or any of its decision makers to change its behavior, because it has absolutely no interest in the frozen funds belonging to Zarmach.

49. Continued holding of Zarmach's funds will not cause Sudan any financial difficulties, loss of business opportunities, or even deter others from doing business with Sudan. Sudan received its payment, the transaction was completed, and Sudan never once altered or considered altering its behavior. Punishing and withholding the funds from their rightful owner, Zarmach, fulfills none of the purposes of the Sudanese Sanctions.

50. The continued sequestration of the Zarmach funds by OFAC will not aid other claimants against Sudan. The final decision in the *Rux* interpleader case indicates that the Zarmach funds were not available to pay the *Rux* Petitioners and there is no reason to believe that another court in another interpleader case will determine that the Zarmach funds will be subject to the claims of any other hypothetical petitioners in the future. Thus, the funds are serving no purpose for potential claimants, as well as serving no purpose for our government

policy in Sudan. The sole beneficiary of the continued sequestration of the funds is the Bank of New York.

## COUNT I – DECLARATORY JUDGMENT THAT OFAC'S DENIAL OF A LICENSE VIOLATES THE ADMINISTRATIVE PROCEDURE ACT.

51. Plaintiff hereby incorporates by reference the allegations contained in all prior paragraphs of the Complaint.

52. OFAC's refusal to grant a license under these circumstances is arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law.

53. OFAC's refusal to grant a license to Zarmach while allowing BONY to have unfettered use of the blocked funds is contrary to constitutional rights afforded to Zarmach.

54. OFAC's refusal to grant a license to Zarmach constitutes an action in excess of its statutory authority requiring the exercise of discretion in the issuance or denial of licenses.

WHEREFORE, Zarmach Oil Services, Inc. respectfully requests that this Court declare that the denial of license by OFAC be reversed and that the Zarmach be granted a license to regain possession of its funds. Zarmach also requests its attorney fees, costs and such other relief as this Court deems just.

## COUNT II – DECLARATORY JUDGMENT THAT OFAC'S ACTIONS VIOLATE THE U.S. CONSTITUTION'S "TAKINGS" CLAUSE

55. Plaintiff hereby incorporates by reference the allegations contained in all prior paragraphs of the Complaint.

56. The United States Constitution prohibits the taking of private property for public use without just compensation. U.S. Const. amend. V.

57. By extension, the U.S. Government may not take private property and distribute that property to another private party without just compensation.

58. OFAC's refusal for the past six years to grant a license to Zarmach (and its predecessor in interest, Cliveden) constitutes a denial to Zarmach of the use of its property while simultaneously allowing BONY to have the unfettered use of the property to generate wealth for BONY.

59. Despite any provisions for the payment of interest if and when the funds are returned to Zarmach, such deferred compensation is not "just compensation" as Zarmach may not survive the injury inflicted by the denial of $915,102 of its assets for a substantial number of years.

60. OFAC has provided no indication that the sanctions against the Sudan will ever be revoked or that a license will ever be granted to Zarmach. Without such assurance, the blocking of funds must at some point be characterized as a seizure and a "taking" by the government.

61. Even the temporary blocking of funds constitutes a taking of a valuable asset – the use of almost a million dollars. Each day such use is denied, the Government is taking such asset and distributing the asset to BONY which enjoys the unfettered use of such asset and is allowed to use such asset to substitute for funds necessary for FDIC capital requirements of BONY.

WHEREFORE, Zarmach Oil Services, Inc. respectfully requests that this Court grant a declaratory judgment that (i) OFAC's actions violate the U.S. Constitution, (ii) that a license should be immediately issued, and (iii) that the use of the blocked funds be immediately restored to Zarmach. Zarmach also requests its attorney fees, costs and such other relief as this Court deems just.

## COUNT III – INJUNCTIVE RELIEF TO UNBLOCK THE FUNDS

62. Plaintiff hereby incorporates by reference the allegations contained in all prior paragraphs of the Complaint.

63. The goals and purposes of the SSR simply are not achieved or promoted through the continued retention of the funds and they should be released.

WHEREFORE, Zarmach respectfully requests that this Court issue an injunction compelling OFAC to issue a license for the release of the $915,102 and the payment to Zarmach of all interest earned by the blocked funds. Zarmach also requests its attorney fees, costs and such other relief as this Court deems just.

November 17, 2009

Respectfully submitted,

SCHERTLER & ONORATO, L.L.P.

_____
David H. Dickieson (DC Bar #321778)
601 Pennsylvania Avenue, N.W.
North Building, Ninth Floor
Washington, D.C. 20004
Ph. (202) 824-1222
Fax (202) 628-4177

*Counsel for Zarmach Oil Services, Inc.*