# UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| ZARMACH OIL SERVICES, INC., | ) ) |
| Plaintiff, | ) ) ) |
| v. | ) Civil Action No. 09-2164 (ESH) |
| UNITED STATES DEPARTMENT OF THE TREASURY, OFFICE OF FOREIGN ASSETS CONTROL, | ) ) ) ) ) |
| Defendant. | ) ) ) |

## MEMORANDUM OPINION

Plaintiff Zarmach Oil Services, Inc. ("Zarmach") has sued the United States Department of the Treasury, Office of Foreign Assets Control ("OFAC"), seeking review under the Administrative Procedures Act ("APA"), 5 U.S.C. §§ 701-706, of OFAC's denial of a specific license to release funds blocked pursuant to the sanctions regime against the Government of Sudan. Zarmach argues that OFAC's denial violates the APA because it is arbitrary and capricious and contrary to law. Defendant has moved to dismiss and for summary judgment. For the reasons stated herein, the Court will grant defendant's motion.

## BACKGROUND

### I. STATUTORY FRAMEWORK

In 1977, Congress enacted the International Emergency Economic Powers Act ("IEEPA"), 50 U.S.C. §§ 1701-1706, amending the Trading With the Enemy Act of 1917 ("TWEA") and granting the President the authority to regulate various international economic transactions during declared wars or national emergencies. Upon presidential declaration of a national emergency "to deal with any unusual and extraordinary threat, which has its source in

whole or substantial part outside the United States, to the national security, foreign policy, or economy of the United States," 50 U.S.C. § 1701(a), IEEPA authorizes the President to:

> regulate, direct and compel, nullify, void, prevent or prohibit, any acquisition, holding, withholding, use, transfer, withdrawal, transportation . . . of, or dealing in, or exercising any right, power, or privilege with respect to, or transactions involving, any property in which any foreign country or a national thereof has any interest . . . with respect to any property, subject to the jurisdiction of the United States . . . .

*Id.* §1702(a)(1)(B).

On November 3, 1997, President Clinton issued Executive Order No. 13067, which authorized a series of economic sanctions against the Government of Sudan pursuant to IEEPA. Finding that the Government of Sudan's "continued support for international terrorism; ongoing efforts to destabilize neighboring governments; and the prevalence of human rights violations, including slavery and the denial of religious freedom" constituted "an unusual and extraordinary threat to the national security and foreign policy of the United States," Exec. Order No. 13067, 62 Fed. Reg. 59989 (Nov. 3, 1997), the President blocked "all property and interests in property of the Government of Sudan that are in the United States [or] that hereafter come within the United States." *Id*. § 1. The Executive Order further authorized the Secretary of the Treasury, "in consultation with the Secretary of State and, as appropriate, other agencies . . . to take such actions, including the promulgation of rules and regulations, and to employ all powers granted to [the President] by IEEPA, as may be necessary to carry out the purposes of [the] order," including redelegation of any of these functions to other officers and agencies of the United States Government. *Id.* § 5.

On October 13, 2006, President Bush issued Executive Order No. 13412, which maintained the blocking of the Government of Sudan and extended the scope of the blocking to

2

Sudanese petroleum and petro-chemical industries. *See* Exec. Order No. 13412, 71 Fed. Reg. 61369 (Oct. 13, 2006).

Pursuant to IEEPA and a delegation of authority by the Secretary of the Treasury, 31 C.F.R. § 538.802, OFAC has promulgated regulations to implement Executive Order Nos. 13067 and 13412. OFAC's regulations provide that:

> Except as authorized . . . , no property or interests in property of the Government of Sudan, that hereafter come within the United States . . . may be transferred, paid, exported, withdrawn or otherwise dealt in.

31 C.F.R. § 538.201(a). The regulations further provide that:

> Any transfer . . . which is in violation of any provision of this part . . . and involves any property or interest in property blocked pursuant to § 538.201 is null and void and shall not be the basis for the assertion or recognition of any interest in or right, remedy, power or privilege with respect to such property or property interests.

31 C.F.R. § 538.202(a). Since 2000, OFAC has defined "Government of Sudan" to include the Sudanese Petroleum Corporation ("Sudapet"), based on evidence that Sudapet was owned by the Government of Sudan's Ministry of Energy. (Declaration of Adam J. Szubin ["Szubin Decl."] ¶ 20.)

OFAC defines the terms "property" and "property interest" to include "any other property, real, personal, or mixed, tangible or intangible, or interest or interests therein, present, future or contingent." 31 C.F.R. § 538.310. The regulations further provide that "the term interest when used with respect to property (e.g., 'an interest in property') means an interest of any nature whatsoever, direct or indirect." 31 C.F.R. § 538.307. The regulations define "transfer" to mean:

> any actual or purported act or transaction . . . whether or not done or performed within the United States, the purpose, intent, or effect of which is to create, surrender, release, convey, transfer, or alter,

3

> directly or indirectly, any right, remedy, power, privilege, or interest with respect to any property and, without limitation upon the foregoing, shall include the making, execution, or delivery of any assignment, power, conveyance . . . agreement, contract, . . . [or] sale . . . .

31 C.F.R. § 538.313.

Under its sanctions programs, OFAC may, by request, issue a "specific license" to authorize an otherwise prohibited transaction or service. *See* 50 U.S.C. app. § 5; 31 C.F.R. § 501.801. OFAC has interpreted its blocking authority under IEEPA and implementing executive orders as granting it discretionary authority to issue or withhold such licenses based on national security and foreign policy considerations, and OFAC regulations generally do not compel the issuance of a specific license once certain criteria are met. (Szubin Decl. ¶ 15.) The Sudanese Government's interest in blocked property is extinguished once the property has been transferred pursuant to an OFAC-licensed transfer. 31 C.F.R. § 538.403.

## II. FACTUAL HISTORY

In November 2003, Cliveden Petroleum, Inc. ("Cliveden"), a corporation located in Geneva, Switzerland, negotiated a lease with Sudapet for oil drilling rights in the Sudan. (Compl. ¶ 5.) Pursuant to the lease, Cliveden requested that its bank, Banco Atlantico, Gibraltar, transfer $915,102 via electronic wire to Sudapet's bank. (*Id.* ¶ 7.) During the transfer, the funds were unintentionally routed through the intermediary bank of Bank of New York Mellon in the United States. (*Id.* ¶ 9.) Because the assets were destined for Sudapet, an entity defined by OFAC as part of the Government of Sudan, OFAC blocked the transfer and froze the assets.

A month later, on December 2, 2003, Cliveden entered into an agreement to "irrevocably and unconditionally assign to Zarmach all of its rights and benefits attached to the pending

4

blocked funds and to the related claim against the US Office of Foreign Asset Control."[1] (*Id*. ¶ 17; *Id*. Ex. 3.) Despite this purported transfer of rights, on January 13, 2004, Banco Atlantico, on behalf of Cliveden (which presumably no longer had any interest in the funds), applied to OFAC for a license to allow the funds to be released. (*Id*. ¶ 13.) OFAC denied this request, explaining that "the blocked funds transfer in question involves an interest of a Sanctions Target; specifically, pursuant to Sudanese Sanctions Regulations, 31 C.F.R. Part 538" and that the release of the blocked assets "would be inconsistent with U.S. sanctions policy." (*Id.* Ex. 2.)

Subsequently, Cliveden wired a separate payment of $915,102 to Sudapet in order to satisfy its obligations under the lease transaction. (*Id.* ¶ 16.)

On August 14, 2009, Zarmach submitted an Application for the Release of Blocked Funds, seeking reconsideration of OFAC's previous denial of a specific license regarding this transaction. (*Id.* ¶ 18; Administrative Record ["AR"] at 000007-19.) On September 2, 2009, OFAC denied Zarmach's request. (Compl. Ex. 4.) OFAC explained that it "licenses the release of blocked funds only under limited and compelling circumstances consistent with the national security and foreign policy interests of the United States" and stated that while it had reviewed the information submitted by Zarmach, OFAC had "determined once again that licensing the release of the blocked funds would be inconsistent with OFAC policy," as the transfer in question involved "an interest of a sanctions target, specifically, **Sudanese Petroleum Corporation**." (*Id.*)

---

[1] This transfer appears to have occurred pursuant to a corporate restructuring by Cliveden, which currently no longer exists as a corporate entity and whose former Chairman is now the Chairman of Zarmach. (Plaintiff's Response to Defendant's Motion to Dismiss and Motion for Summary Judgment ["Pl.'s Opp."] Ex. A.)

Zarmach initiated the present action on November 17, 2009, claiming that OFAC's denial of a license violates the APA and the Takings Clause of the Fifth Amendment to the Constitution.

## ANALYSIS

### I. STANDARD OF REVIEW

When a district court reviews agency action under the APA, as is the case here, the court may "reverse the agency action only if it is 'arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law.'" *United Techs. Corp. v. U.S. Dep't of Defense*, 601 F.3d 557, 562 (D.C. Cir. 2010) (quoting 5 U.S.C. § 706(2)(A)). "This 'standard is narrow and a court is not to substitute its judgment for that of the agency. Nevertheless, the agency must examine the relevant data and articulate a satisfactory explanation for its action[,] including a rational connection between the facts found and the choice made.'" *Id.* (quoting *Motor Vehicle Mfrs. Ass'n of U.S., Inc. v. State Farm Mut. Auto. Ins. Co.*, 463 U.S. 29, 43 (1983)). In applying this standard, the Court does not undertake its own fact-finding, *Holy Land Found. For Relief and Dev. v. Ashcroft ("Holy Land I")*, 219 F. Supp. 2d 57, 67 (D.D.C. 2002), *aff'd*, 333 F.3d 156 (D.C. Cir. 2003), but rather must base its review on the "administrative record that was before the [agency] that the time [it] made [its] decision."[2] *Citizens to Preserve Overton Park, Inc. v. Volpe*, 401 U.S. 402, 415 (1971). Summary judgment is an appropriate procedure for resolving a challenge to a federal agency's administrative decision when review is based upon the administrative record, even though the Court does not employ the standard of review set forth in Rule 56 of the Federal Rules of Civil Procedure. *Richards v. I.N.S.*, F.2d 1173, 1177 & n.28 (D.C. Cir. 1977); *Fund for Animals v. Babbitt*, 903 F. Supp. 96, 105 (D.D.C. 1995).

---

[2] Zarmach therefore cannot create a material issue of fact at this stage of the proceedings by offering new "factual" information (i.e., the affidavit by the Chairman of both Cliveden and Zarmach) that had not been previously submitted to OFAC. *See also infra* note 6.

An agency's decision need not be "a model of analytic precision to survive a challenge," and "[a] reviewing court will 'uphold a decision of less than ideal clarity if the agency's path may reasonably be discerned.'" *Dickson v. Sec'y of Def.*, 68 F.3d 1396, 1404 (D.C. Cir. 1995) (quoting *Bowman Transp., Inc. v. Arkansas-Best Motor Freight Sys.*, 419 U.S. 281, 286 (1974)). "The court, therefore, must be able to conclude that the agency 'examine[d] the relevant data and articulate[d] a satisfactory explanation for its action including a rational connection between the facts found and the choice made.'" *Kreis v. Sec'y of the Air Force*, 406 F.3d 684, 686 (D.C. Cir. 2005) (quoting *Motor Vehicle Mfrs. Ass'n*, 463 U.S. at 43). Accordingly, courts "'do not defer to the agency's conclusory or unsupported suppositions,'" *United Techs.*, 601 F.3d at 562 (quoting *McDonnell Douglas Corp. v. U.S. Dep't of the Air Force*, 375 F.3d 1182, 1187 (D.C. Cir. 2004)), and counsel's "post hoc rationalizations" cannot substitute for an agency's failure to articulate a valid rationale in the first instance. *El Rio Santa Cruz Neighborhood Health Ctr., Inc. v. U.S. Dep't of Health & Human Servs.*, 396 F.3d 1265, 1276 (D.C. Cir. 2005); *see Burlington Truck Lines v. United States*, 371 U.S. 156, 169 (1962). Such agency litigating positions "are not entitled to deference because they do not necessarily reflect the views of the agency, but rather may have been developed hastily, without adequate consideration of opposing positions pursuant to the agency's normal deliberative process." *Public Citizen, Inc. v. Lew*, 127 F. Supp. 2d 1, 10 (D.D.C. 2000).

Furthermore, courts owe a substantial measure of "deference to the political branches in matters of foreign policy," including cases involving blocking orders. *Regan v. Wald*, 468 U.S. 222, 242 (1984) ("Matters relating 'to the conduct of foreign relations . . . are so exclusively entrusted to the political branches of government as to be largely immune from judicial inquiry or interference.'" (quoting *Harisiades v. Shaughnessy*, 342 U.S. 580, 589 (1952))); *accord Holy*

*Land I*, 219 F. Supp. 2d at 84 ("Blocking orders are an important component of U.S. foreign policy, and the President's choice of this tool to combat terrorism is entitled to particular deference.").

## II.     LEGAL ANALYSIS

Plaintiff's principal claim is that OFAC's refusal to grant it a specific license amounts to a violation of 5 U.S.C. § 706(2)(A)-(C) of the APA.  (Compl. ¶¶ 52-54; Pl.'s Opp. at 5.)  Under these provisions, this Court may vacate a decision by an agency if the decision is:

> (A) arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law;
>
> (B) contrary to constitutional right, power, privilege, or immunity;[3] [or]
>
> (C) in excess of statutory jurisdiction, authority, or limitations, or short of statutory right . . . .

5 U.S.C. § 706(2)(A)-(C).  The plaintiff claims that OFAC's actions should be vacated under each of the above provisions.  (Pl.'s Opp. at 15-22.)  The Court will address each *seriatim*.

### A.     Statutory Authority[4]

Zarmach claims that OFAC's decisions to maintain the blocking were in excess of OFAC's statutory authority, arguing in its license application to OFAC that the Government of

---

[3] In addition to claiming that the OFAC's actions violate various constitutional provisions, and thus should be vacated pursuant to the APA, the plaintiff's complaint and its opposition independently allege various constitutional violations.  (Compl. ¶¶ 55-61; Pl.'s Opp. at 19-22.)  However, the claims are identical.  Because the Court finds that the OFAC's actions do not violate the Constitution, and thus should not be vacated under the APA, the constitutional claims necessarily must fail as well.

[4] The "standing" arguments raised by defendant do not require extended analysis, as they are almost entirely premised on the validity of OFAC's blocking order, thereby implicating the precise merits-based question associated with plaintiff's claims.  "[T]hough the trial court may rule on disputed jurisdictional facts at any time, if they are inextricably intertwined with the merits of the case it should usually defer its jurisdictional decision until the merits are heard." *Herbert v. Nat'l Acad. of Sciences*, 974 F.2d 192, 198 (D.C. Cir. 1992).

Sudan has "no ownership interest" in the blocked funds because the funds never actually reached Sudapet's possession, and because Cliveden subsequently satisfied its obligation to Sudapet through a separate transaction. (AR-000007.)

IEEPA provides the President with broad authority to block "property in which any foreign country or a national thereof has *any interest.*" 50 U.S.C. § 1702(a)(1)(B) (emphasis added). A sanctions target need not have a "legally enforceable ownership interest" in assets in order to subject them to blocking.[5] *Holy Land Found. for Relief & Dev. v. Ashcroft ("Holy Land II")*, 333 F.3d 156, 162-63 (D.C. Cir. 2003) (upholding OFAC's broad definition of "property interest").

Congress has authorized the Executive Branch to define the statutory terms of IEEPA, including the scope of the term "any interest," 50 U.S.C. § 1704, and because OFAC is charged with administering the provisions of Executive Order No. 13067 and has the authority to promulgate regulations to effectuate its provisions, the agency's broad definitions carry the force of law. *See* 31 C.F.R. § 538.802; *Consarc Corp. v. U.S. Treasury Dep't, Office of Foreign Assets Control*, 71 F.3d 909, 914-15 (D.C. Cir. 1995) (OFAC is entitled to *Chevron* deference in its interpretations of IEEPA, and its interpretation of its own regulations "receives an even greater degree of deference than the *Chevron* standard, and must prevail unless plainly inconsistent with the regulation") (citation omitted); *Consarc Corp. v. Iraqi Ministry*, 27 F.3d

---

[5] Zarmach's repeated reliance on the *Rux* litigation, a judgment action pursuant to the Terrorism Risk Insurance Act of 2002, Pub. L. 107-297 ("TRIA"), is therefore inapposite. *See Rux v. ABN-Amro Bank N.V.*, No. 08-cv-6588, 2009 U.S. Dist. LEXIS 42847 (S.D.N.Y. April 14, 2009)). While TRIA authorizes the attachment of certain blocked assets in which a terrorist party has an actual ownership interest ("blocked assets of that terrorist party," TRIA § 201(a)), the Sudanese sanctions regime under IEEPA authorizes blocking assets in which the Government of Sudan has *any* interest, even if it falls short of a legally enforceable ownership interest.

695, 701 (D.C. Cir. 1994) (The Treasury Department "may choose and apply its own definition of property interests, subject to deferential judicial review.").

Pursuant to this authority, OFAC defines the term "property interest" broadly to include "any . . . property, real, personal, or mixed, tangible or intangible, or interest or interests therein, present, future or contingent." 31 C.F.R. § 538.310. *See also id.* § 538.307 (defining "interest," used with respect to property, as "an interest of any nature whatsoever, direct or indirect"). Consequently, OFAC's blocking of Cliveden's transfer was within the scope of its statutory authority, even if Sudapet's interest in the assets took the form of an "indirect future or contingent interest." (Defendant's Motion to Dismiss and Motion for Summary Judgment ["Def.'s Mot."] at 16.).

Zarmach argues, however, that the second payment from Cliveden to Sudapet consummating their lease deal extinguished whatever property interest Sudapet may have once had in the blocked assets, depriving OFAC of the statutory authority to continue blocking them. OFAC regulations, however, provide only one method by which the Sudanese Government's interest in the funds may be extinguished: a valid license from OFAC, *see* 31 C.F.R. § 538.403(a), and contain no provision by which the efforts of a sanctions target and a company it wishes to do business with can, on their own, "un-block" assets frozen by OFAC.

Furthermore, the exercise of OFAC blocking authority over the assets is not, as Zarmach claims, an exercise in "extraterritorial jurisdiction." (Pl.'s Opp. at 13.) The regulations explicitly prohibit the transfer of any "property or interests in property of the Government of Sudan, that are in the United States, that hereafter come within the United States, or that are or hereafter come within the possession or control of U.S. persons, including their overseas branches." 31 C.F.R. § 538.201(a) (emphasis added). It is undisputed both that the blocked

funds came within U.S. jurisdiction during the course of the original transfer (Compl. ¶ 9), and are currently held by the Bank of New York Mellon, (*id.* ¶ 32). Once blocked, the assets cannot be transferred except pursuant to an OFAC license. *See* 31 C.F.R. §§ 501.801, 538.201, 538.202, 538.403. This result is not altered by the fact that a foreign entity has an interest in the blocked funds, or that one such foreign entity purports to transfer the funds to another foreign entity, as "to have enforceable rights in the United States, [the assignee] must find authority for the assignment somewhere in United States law." *Havana Club Holding, S.A. v. Galleon S.A.*, 203 F.3d 116, 122 (2d Cir. 2000) (Under the Cuban Assets Control Regulations, blocked assets cannot be transferred without authorization from OFAC.).

The Court also notes the consistent refrain by Zarmach that OFAC's continued refusal to issue it a license fails to advance the policies and goals of the United States' sanctions program against Sudan. (*See, e.g.*, AR-000007 ("The funds no longer serve any U.S. policy purpose, as neither Sudan nor [Sudapet] assert any ownership interest in the funds."); Compl. ¶ 48 ("The present circumstances offer no incentive or impetus for Sudan, or any of its decision makers to change its behavior, because it has absolutely no interest in the frozen funds belonging to Zarmach."); *id.* ¶ 49 ("Punishing and withholding the funds . . . fulfills none of the purposes of the Sudanese Sanctions."); Pl.'s Opp. at 5 ("Nothing in [the designation of Sudapet as a blocked entity] was intended to punish foreign business operating outside of the United States from doing business with Sudan.").) This policy argument, however, has no legal merit.

Zarmach may indeed believe that OFAC's policy of refusing to unblock transfers made through U.S. banks between foreign companies and sanctions targets is an ineffective strategy for exerting pressure on foreign governments. But as OFAC has asserted, such a policy discourages companies worldwide from doing business with the sanctions target and places

11

companies at risk for having their assets frozen should they inadvertently be routed through the United States, increasing transaction costs on such businesses and forcing sanctions targets to pay higher prices for goods and services. (*See* Def.'s Mot. Ex. A, Declaration of Adam J. Szubin (Mar. 10, 2010) ¶ 11.) If companies knew they could recover blocked assets simply by re-paying the sanctions target by other means, OFAC's blocking authority would be severely diminished, thereby reducing the President's leverage in dealing with sanctions targets. (*Id*. ¶¶ 11-12.) In any event, this Court declines to adjudicate such matters of strategy and tactics relating to the conduct of foreign policy, which "are so exclusively entrusted to the political branches of government as to be largely immune from judicial inquiry or interference." *Regan*, 468 U.S. at 242.

### B. Arbitrary and Capricious

Zarmach argues that OFAC's decision to deny a license was arbitrary and capricious because (1) the basis for this decision cannot reasonably be discerned and (2) OFAC has treated it differently than a similarly situated party—namely, the Government of Ethiopia. (*Id.* at 16-19.)

#### 1. Basis for OFAC's Decision

The basis in the administrative record for OFAC's decision to deny a specific license is clear. Both Cliveden's original application for a license and Zarmach's request for reconsideration of OFAC's initial denial stated that Sudapet was the intended beneficiary of the original transfer. (AR-000004, AR-000005, AR-000010.) Sudapet had previously been designated by OFAC as part of the Government of Sudan. The administrative record is clear that because the transfer involved "an interest of a sanctions target," the funds were subject to blocking and a specific license would be inconsistent "with the national security and foreign policy interests of the United States." (AR-000001; AR-000006.) The fact that OFAC reached

12

this decision despite Zarmach's argument that neither Sudan nor Sudapet had any "*ownership* interest in the funds" (AR-000007 (emphasis added)) does not mean that OFAC's path cannot "reasonably be discerned.'" *Dickson*, 68 F.3d at 1404.[6]

## 2. OFAC Action Involving Government of Ethiopia

Zarmach challenges OFAC's decision as inconsistent with its treatment of blocked funds destined for Sudan from the Government of Ethiopia, arguing that because OFAC "consider[ed] a release" of Ethiopia's blocked assets, "it would be absurd not to draw the same conclusion in a scenario which mirrors the same facts." (Pl.'s Opp. at 17-18.)

While an agency "must treat similar cases in a similar manner unless it can provide a legitimate reason for failing to do so," *Indep. Petroleum Ass'n of Am. v. Babbitt*, 92 F.3d 1248, 1258 (D.C. Cir. 1996), this Court is mindful that "[a] review of a decision made by OFAC is 'extremely deferential' because OFAC operates 'in an area at the intersection of national security, foreign policy, and administrative law,'" *Empresa Cubana Exportadora de Alimentos y Productos Varios v. United States Dep't of Treasury*, 606 F. Supp. 2d 59, 68 (D.D.C. 2009) (quoting *Islamic Am. Relief Agency v. Gonzales*, 477 F.3d 728, 734 (D.C. Cir. 2007)).

Here, OFAC has proffered sufficient legitimate reasons for treating these cases differently. As an initial matter, it bears noting that while OFAC "considered" issuing a license for the release of Ethiopia's blocked assets, it never actually did so. (Pl.'s Opp. at 18; Defendant's Reply ["Def.'s Reply"] at 10.) Furthermore, OFAC was faced with a specific request from a foreign country (as opposed to a private business), and "based on strong foreign

---

[6] Zarmach's assertions in both its Complaint and in a sworn declaration by its own chairman that "Sudan has no interest in the blocked funds" does not alter this analysis. Even if the Court were required to credit such allegations—which it is not, as they represent legal conclusions—the issue before the Court is based on the record before OFAC at the time of its decision, *Citizens to Preserve Overton Park, Inc.*, 401 U.S. at 415, and whether the agency can demonstrate a "rational connection between the facts found and the choice made," *Kreis*, 406 F.3d at 686.

policy guidance from the State Department and its own consideration of the national security and foreign policy interests involved," OFAC considered the possibility of issuing a license. (AR-000153–54) Such foreign policy considerations are owed substantial deference by this Court, *Regan*, 468 U.S. at 242, and certainly constitute "legitimate reasons" for reaching a different outcome. Zarmach has therefore not met its burden of establishing that OFAC's differing treatment of its assets and those of the Government of Ethiopia was arbitrary and capricious.

    C.    **Constitutional Claims**

        1.    **Takings Clause of the Fifth Amendment**

Zarmach alleges that OFAC's refusal to grant it a license violates the Takings Clause of the Fifth Amendment. (Compl. ¶ 53, 55-61.) Under the Fifth Amendment, no "private property [shall] be taken for public use, without just compensation." U.S. Const. amend. V. This claim must be dismissed.

As an initial matter, the Court lacks subject matter jurisdiction over this claim, which is properly brought before the United States Court of Federal Claims pursuant to the Tucker Act, 28 U.S.C. § 1491(a)(1). *Dames & Moore v. Regan*, 453 U.S. 654, 688-89 (1981) (noting that Court of Federal Claims is the proper forum for claims alleging an unconstitutional taking). Moreover, it is no answer for plaintiff to argue that it seeks not compensation but a judgment setting aside OFAC's decision. *Ry. Labor Executives' Ass'n v. United States*, 987 F.2d 806, 816 (D.C. Cir. 1993) ("The Taking Clause does not prohibit the government from taking private property. The Clause requires only that the government accomplish the taking in a particular way, namely, by paying for the property."); *Islamic American Relief Agency v. Unidentified FBI Agents*, 394 F. Supp. 2d 34, 51 (D.D.C. 2005) (finding Court of Federal Claims is proper forum for takings claim in suit challenging IEEPA blocking under APA), *aff'd in part sub nom. Islamic Am. Relief Agency v. Gonzales*, 477 F.3d 728 (D.C. Cir. 2007).

But even if this Court had jurisdiction over plaintiff's Takings Clause claim, which it does not, the claim fails as a matter of law. It is well-established that the blocking of assets pursuant to an executive order is not a taking within the meaning of the Fifth Amendment. *Islamic American Relief Agency v. Unidentified FBI Agents*, 394 F. Supp. 2d at 51; *Holy Land I*, 219 F. Supp. 2d at 78 (citing multiple cases for the proposition that the blocking of assets does not "as a matter of law, constitute takings within the meaning of the Fifth Amendment"). Accordingly, plaintiff's Fifth Amendment claim will be dismissed.

### 2. Fourth Amendment

Zarmach further claims that OFAC's "continued blocking" of the funds constitutes an unreasonable seizure contrary to the Fourth Amendment. This claim, too, must fail. As an initial matter, such a claim, having been raised for the first time in plaintiff's opposition, is not properly before the Court. *See Sharp v. Rosa Mexicano*, 496 F. Supp. 2d 93, 97 n.3 (D.D.C. 2000) ("[P]laintiff may not, through summary judgment briefs, raise the new claims . . . because plaintiff did not raise them in his complaint, and did not file an amended complaint."); *DSMC, Inc. v. Convera Corp.*, 479 F. Supp. 2d 68, 84 (D.D.C. 2007) (rejecting plaintiff's attempts to broaden claims and thereby amend its complaint in opposition to defendant's motion for summary judgment).

Even if the Court were to read Zarmach's vague assertion that "OFAC's refusal to grant a license . . . is contrary to constitutional rights afforded to Zarmach" (Compl. ¶ 53), as somehow containing the requisite specificity necessary to assert a Fourth Amendment violation, this claim would fail. As the Court in *Holy Land I* noted, "the Government plainly had the authority to issue the blocking order pursuant to the IEEPA and the executive orders and the Court has determined that its actions were not arbitrary and capricious. Further, the case law is clear that a blocking of this nature does not constitute a seizure." *Holy Land I*, 219 F. Supp. 2d at 78-79

(citing *Tran Qui Than v. Regan*, 658 F.2d 1296, 1301 (9th Cir. 1981); *D.C. Precision Inc. v. United States*, 73 F. Supp. 2d 338, 343 n.1. (S.D.N.Y. 1999); *Can v. United States*, 820 F. Supp. 106, 109 (S.D.N.Y. 1993)); *Islamic American Relief Agency v. Unidentified FBI Agents*, 394 F. Supp. 2d 34 at 48 ("[T]his Court agrees that the OFAC's blocking of the [plaintiff's] assets does not create a cognizable claim under the Fourth Amendment."). The Court therefore rejects plaintiff's belated attempt to assert a Fourth Amendment claim.

## CONCLUSION

For the foregoing reasons, the Court grants defendant's motion for summary judgment. A separate order accompanies this Memorandum Opinion.

/s/
ELLEN SEGAL HUVELLE
United States District Judge

Date: November 16, 2010